# White, McLane & Morris *v.* Farris.

*Action for Penalty for Cutting Trees.*

124 461
127 250

124 461
135 515
135 537

124 461
139 504

1. *Ancient deed; when admissible without proof of execution.—* Where the plaintiff to a suit offered in evidence as an ancient document admissible without proof of its execution, a deed more than thirty years old, and it appeared that the deed was in the custody of the plaintiff, that he received it from his immediate grantor who claimed it as a part of his chain of title, and that the grantee in the deed was dead but that in his life time and while he was claiming the land in question he appointed an agent to look after it who, for ten or twelve years, gave in said land for taxation for his principal and paid the taxes for him—these were acts referable to the title, and were sufficient as corroborative evidence to admit the deed as an ancient document without proof of its execution, although the lands covered by the deed being unenclosed wild lands were never in the actual possession of the plaintiff or his grantor.

2. *Penalty for cutting trees; given only to the owner of the land.* The statute which gives to the land-owner a penalty for certain specified trees knowingly and willfully cut by another without the consent of the owner of the land, Code, § 4137, is penal in its nature and character and must be strictly construed. The right created by it is limited and confined to the owner of the land—to him who owns the legal title.

3. *Same; not recoverable from one bona fide in possession under color of title.*—While the action given by section 4137 of the Code is to the owner of the land, and the right to the penalty necessarily depends upon the title or ownership, and the plaintiff's title may become an issuable fact, the action is neverthe-

[White, McLane & Morris v. Farris.]

less a personal, transitory one, and the statute being strictly penal in its nature, it was not the intention and purpose of the legislature in its enactment to give such penalty as against one in the actual adverse possession of the land under color of title *bona fide* claiming to own the same.

4. *Status of adverse claimant must exist at time of cutting.*—The status of the adverse possession which may be set up in defense of an action for cutting trees is that which existed at the time of the alleged cutting of the trees and not the status at the date of the trial of the cause.

5. *Charges in case of cutting. trees; what proper and what bad.* Charges requested by the defendants in a suit for cutting trees from the land alleged to be the land of the plaintiff, to the effect that if the defendants at the time they cut the trees were in the actual possession of the land under claim and color of title, and in good faith believed they had the legal right to cut the trees, the jury should find for the defendants, assert correct propositions of law and should have been given. But similar charges which ignore the element of good faith or the *bona fide* claim of ownership or title are bad and were properly refused.

6. *Color of title must be bona fide obtained.*—If the color of title offered in evidence by the defendants in a suit for cutting trees was procured by fraud with which they were connected, then such fraud would impeach the *bona fides* of their claim of ownership, and if their possession of the land on which the trees grew was so obtained, and the trees were cut by them during such possession, then the defense of *bona fide* claim of ownership would fail.

7. *Affirmative charge when improper.*—The affirmative charge should never be given when there is any material conflict in the evidence, or when there is evidence which authorizes a reasonable inference of facts unfavorable to a right of recovery by the party asking such charge.

8. *Charge that the jury must be reasonably persuaded bad.*—A charge is properly refused which demands a verdict if the "jury are reasonably persuaded from the evidence" of certain facts. This exacts an improper standard of proof; the charge should have been predicated upon reasonable satisfaction.

9. *Tax deed when offered as color of title; charge attacking the tax sale bad.*—Where a tax deed is offered not as a muniment of title, but is expressly limited to color of title, charges requested which attack the tax sale on account of errors in the advertisement or decree of sale should have been refused—the tendency of the charge being to destroy the deed as color of title.

[White, McLane & Morris v. Farris.]

APPEAL from Geneva Circuit Court.

Tried before Hon. J. W. FOSTER.

The facts are sufficiently set out in the opinion. Charges 1 and 2 given to the plaintiff are as follows: 1. "If the jury believe from the evidence that the advertisement made by the tax collector of the sale of the land in question, if there was an advertisement, described the land as being partly in township 1 and partly in township 6, then the tax sale, if there was one made upon such advertisement was void." 2. "If upon the instruction given you in charge you shall find from the evidence either that all the land sold for taxes in the county, for the year 1894, were sold under one general decree, covering all the lands of various persons sold that year, or that the statutory affidavit of the tax collector was not made, or that the numbers of the land so described were different from the numbers of the land in question, in either event the sale, if there was one, of the land assessed to B. Bullard was void." Judgment for plaintiff.

P. N. HICKMAN and MORRIS & CARMICHAEL, for appellants.—The deed from Tucker and wife to Bullard was not admissible without proof of execution.—*Beall v. Dearing,* 7 Ala. 124; *Doe v. Eslava,* 11 Ala. 1028; *Carter v. Doe,* 21 Ala. 72; *Alexander v. Wheeler,* 78 Ala. 167. (2). This is a personal transitory action and the title to land cannot be tried in such cases.—*Cooper v. Watson,* 73 Ala. 252; *Beaty v. Brown,* 76 Ala. 267; *Brooks v. Rogers,* 101 Ala. 124. (3). One acting in good faith cannot be guilty.—*Russell v. Irby,* 13 Ala. 131. (4). The affirmative charge should have been given to the defendant on the proof that he was in the adverse possession of the land.—Cases cited and 72 Ala. 77; 79 Ala. 209.

CLAUDE RILEY, W. O. MULKEY and SOLLIE & KIRKLAND, *contra.*—Charge 1 was properly given to the appellee.—*Duke v. Glemon,* 72 Ala. 160; *Oliver v. Robinson,* 58 Ala. 46; *Clarke R. Rowan,* 53 Ala. 401. And so of charge 2.—*Diggers v. Cassady,* 71 Ala. 529. (2). This action given to person holding the title to the land. *Turner Coal Co. v. Glover,* 101 Ala. 289; *L. & N. R. R. Co. v. Hill,* 115 Ala. 234; *Allison v. Little,* 93 Ala. 150; *Gravesly v. Williams,* 112 Ala. 539.

DOWDELL, J.—This is an action commenced by the appellee, plaintiff in the court below, to recover of the defendants the statutory penalty for the cutting of certain trees on plaintiff's land. On the trial of the cause, by agreement of parties, the general issue was pleaded in short by consent with leave to give in evidence any matter which might be specially pleaded. The plaintiff, in support of the averment in the complaint of his ownership of the land upon which it was alleged that the trees were cut, offered the following documentary evidence of title: A patent from the general government to one Jesse W. Tucker; a deed from Jesse W. Tucker and wife to A. B. Bullard; a deed from A. B. Bullard to Bartow Bullard, and a deed from Bartow Bullard and wife to J. S. W. Cawthorn, and a deed from Cawthorn and wife to the plaintiff. The deed from Jesse W. Tucker and wife to A. B. Bullard was objected to by the defendants upon the ground that there was no attesting witnesses, and, though duly acknowledged, had not been recorded within the time prescribed by the law to make it self-proving, and there being no proof of its execution. This deed bore date of December 17th, 1860, and was therefore more than thirty years old at the time of the trial when it was offered in evidence. The deed was in the custody of the plaintiff, and it was also shown in connection with the offer of the same in evidence that the plaintiff received it from his immediate grantor, Cawthorn, who claimed it as a part of his chain of title; and it was further shown that A. B. Bullard, the grantee in this deed, had been dead for four or five years, but that during his lifetime, while he was claiming the land in question, he appointed one Earl as his agent to look after the same, and that said agent for ten or twelve years gave in said land for taxation for A. B. Bullard and paid the taxes on same for him. There was no evidence that either Bullard or Cawthorn were ever in the actual possession of said land, the evidence showing that the said land was wild, unenclosed timber land having no improvements on it. The deed unquestionably comes within that class denominated ancient documents, and which are admitted in evidence without proof of execution; their admissibility as ancient documents being based upon the pre-

sumption and theory that the attesting witnesses are dead; and so well established has become this doctrine and principle that it is not changed or varied, though the attesting witnesses in fact be shown to be alive.

It is contended by appellants that in order to render the deed admissible in evidence, it was necessary, in the absence of proof of its execution, in connection with it as an ancient document, to prove enjoyment under it, or other equivalent explanatory proof, citing *Beal v. Derring,* 7 Ala. 124; *Doe v. Eslava,* 11 Ala. 1028; *Carter v. Doe,* 21 Ala. 72; *Alexander v. Wheeler,* 78 Ala. 167.

The deed here offered was without any suspicious circumstances whatever attaching to it. It was a link in the chain of title. It is found in proper custody, and was received by the plaintiff from his immediate grantor, who was at the time the proper custodian of it. This in connection with the proof that the lands in question were wild and unenclosed lands, with no improvements thereon, and that Earl as the agent of A. B. Bullard, the grantee in the deed, looked after the lands and paid the taxes on the same for said Bullard for ten or twelve years, prior to the time Bullard sold it in 1889, acts referable to the title, was sufficient as corroborative evidence, to admit the deed as an ancient document, without other proof of its execution. This view, we think, is clearly sustained in *Doe v. Eslava, supra,* where on page 1040 it is said: "An ancient deed, that is, one *more than* thirty years old, having nothing suspicious about it, is presumed to be genuine without express proof; and if it is found in the proper custody, and corroborated by evidence of ancient or *modern* corresponding enjoyment, or by other equivalent or explanatory proof, it is presumed that the deed constituted part of the transfer of property therein mentioned; because this is the usual and ordinary course of such transactions among men. The residue of the transaction may be unerringly inferred from the existence of genuine ancient documents." Citing 1 Greenleaf on Evidence, §§ 166 to 169 inclusive, and notes.

The suit was brought under section 4137 of the Code of 1896, which gives to the land-owner a penalty for certain specified trees willfully and knowingly cut by an-

other without the consent of the owner of the land. This statute has been several times passed upon and construed by this court, and being penal in its nature and character has received a strict construction. The right created by the statute is limited and confined to the owner of the land—to him who owns the legal title. As said in the case of *L. & N. R. R. Co. v. Hill et al.,* 115 Ala. 345: "The statute is intended for the protection of the freehold from spoliation or destruction; from that which at common law would be deemed waste. The remedy is given exclusively to the owner of the freehold and he may pursue it, though he have not the possession;" citing *Allison v. Little,* 93 Ala. 150; *Turner Coal Co. v. Glover,* 101 Ala. 289; *Clifton Iron Co. v. Jemison Lumber Co. et al.,* 108 Ala. 581; *Gravlee v. Williams,* 112 Ala. 539. Ownership of the land from which the trees are cut is made by the statute an essential element of the right of recovery of the penalty given. The title or ownership of the land must be averred in the complaint, and if denied or put in issue by the plea of the defendant it must be proven before any recovery can be had. The right to the penalty necessarily depends upon the title or ownership of the land, and it follows that the plaintiff's title to the land may become an issuable fact. But notwithstanding such an issue may become involved in the trial, the action is nevertheless a personal, transitory action. While the penalty given by the statute is based upon the idea and theory of a trespass committed, yet, unlike the actions of trover or detinue, for trees or timber which have been cut and severed from the freehold and converted, where actual or constructive possession of the land by the plaintiff must be shown before a recovery can be had, this statute, in terms, gives the *owner* of the freehold his remedy and right of action without proof of actual possession. While this is true, the statute being strictly penal in its nature, we do not think that it was the intention and purpose of the legislature in its enactment to give such penalty as against one in the actual adverse possession of the land under color of title *bona fide* claiming to own the same.

In *Rogers v. Brooks,* 99 Ala. 34, which was an action for the recovery of the statutory penalty for cutting trees, it is said by Thorington, J., in comment upon this statute: "It prescribes a fixed penalty for cutting trees of specified classes, and a smaller penalty for all other trees, and requires the same to be paid to the owner of the land; and this without reference to whether he was in possession of the land at the time of the cutting or not, or whether the cutting is done by a person in adverse possession of the property or not." It might be inferred from this declaration that though the cutting be done by one in the actual adverse possession under color of title *bona fide* claiming to own the same at the time of the cutting, this would be no defense to the action brought by the owner of the land for the recovery of the penalty; but we hardly think it was the intention and purpose of the learned judge, in the language above quoted, to assert that proposition, for the reason that he had just cited approvingly the cases of *Cooper v. Watson, Admr.,* 73 Ala. 252, and *Beatty v. Brown,* 76 Ala. 267, wherein a contrary doctrine is laid down. It is true that the former case, *Cooper v. Watson,* was an action of trover for the conversion of trees which had been cut and severed from the freehold, but the latter case of *Beatty v. Brown,* reaffirming *Cooper v. Watson,* was an action for the recovery of the penalty under the statute, which we are now considering. In the case of *Brooks v. Rogers,* 101 Ala. 124, McClellan, J., speaking for the court, said: "The cases of *Cooper v. Watson,* 73 Ala. 252, and Beatty v. Brown, 76 Ala. 267, are clearly distinguishable from this one in that the defendants in those cases held *adversely* to the plaintiffs—a fact which is of controlling importance—and the recoveries sought involved trials of the conflicting claims of *title* which could not be adjudicated in these transitory actions. The case of *Allison v. Little,* 93 Ala. 150, did not involve the relation of landlord and tenant, and perhaps what is there said should be limited by consideration of the fact, which does not appear as prominently in the report of

the case and in the opinion as it should, that the wrong-doer was a mere naked trespasser who set up no claim of title to the land against the trustees—though not a tenant of the plaintiffs, he still was not in adverse possession of the premises." It may be here observed that while the case of *Brooks v. Rogers,* which we have just quoted from, was an action in trover, yet the case of *Little v. Allison,* 93 Ala. 150, therein referred to and limited, was an action for the recovery of the statutory penalty. We think the doctrine asserted in *Brooks v. Rogers, supra,* wherein it is said in effect that adverse possession is a fact of controlling importance, is the correct one. The adverse possession here spoken of and meant is an adverse possession under color of title and *bona fide* claim of ownership, as distinguished from a possession by a bare and naked trespasser. It is hardly reasonable to conclude that the legislature intended by the enactment of this statute to impose a penalty upon one in adverse possession of the land under color of title, in good faith claiming to own the same. As we have stated above, in this action for the recovery of the penalty given by the statute, the title of the plaintiff to the land is of necessity involved in the suit, and the fact that his title may be controverted by the defendant will not prevent his recovery provided he sustains his averment of title or ownership, there being no conflicting claim of title set up, yet if the issues as made up under the pleadings involve a trial of conflicting claims of titles of the parties to the suit, and such as would arise out of the defense of an adverse possession by the defendant under color of title and *bona fide* claim of ownership, if such defense be sustained by the proof, the plaintiff would be defeated in his right of recovery of the penalty for trees cut by the defendant during such adverse possession and *bona fide* claim of ownership. And it may be observed here that it is the status of the adverse possession and *bona fide* claim of ownership at the time of the alleged cutting of the trees that is the material inquiry, and not the status at the date of the trial of the case. The fact that the plaintiff in March, 1897, called ndants' attention to defects in their tax title did not y it as color of title nor prevent possession under

it from being adverse.—*Manley's Admr. v. Turnipseed and Wife*, 37 Ala. 522.

It is shown by the evidence on the part of the defendants that the defendants went into possession of the land upon which the alleged trees were cut in 1894 under a certificate of purchase made by them at a tax sale in said year, and continued in possession of the land, claiming to own the same, and that after the expiration of two years from the date of said tax sale they received a tax deed. This deed, however, they failed to record, and when the same was offered in evidence by the defendants in connection with the proof that they had gone into possession of the land under the certificate issued to them, it was expressly stated that the tax deed was offered only as color of title, and it was so received in evidence. The tax deed was not offered as muniment of title. It was also shown in evidence by the defendants that the land in question had no improvements upon the same and was practically of little or no value except for the timber thereon; that they continued in open, notorious possession of the same, cutting timber therefrom, during the years '95, '96 and '97, down to the institution of this suit, during all this time claiming to own said land, and were so in possession and claiming to own such land at the time of the cutting of the trees for which this suit was brought. Under this evidence, we think the court erred in refusing written charges, B, C and F, each of which contained correct legal propositions. Charges G and H were bad, in ignoring the element of good faith, or the *bona fide* claim of ownership or title. A mere adverse holding even under color or claim of title is not alone, sufficient to defeat the plaintiff's right to recover the penalty under the statute, if such adverse holding has not ripened into a title by the lapse of ten years. But if such adverse possession be accompanied with a *bona fide* claim of title or ownership of the land, though short of the period of ten years, the defense would be complete, as the cutting of the timber under such circumstances, would not be *knowingly* and *willfully* done within the meaning of the statute.

There was evidence also on the part of plaintiff tending to show fraud in a change and alteration of the

records as to the assessment, advertisement and sale of the lands under which the defendants claimed to be purchasers and upon which was based their color of title offered in evidence. If the color of title offered in evidence by the defendants was procured by fraud with which they were connected, then such would tend to impeach the *bona fides* of their claim of ownership, and if their possession of the land in question was so obtained, and the trees were cut by them during such possession, then the defense of a *bona fide* claim of ownership would fail.—*Snodgrass v. Branch Bank of Decatur,* 25 Ala. 161. Under this theory of the case, the court very properly refused to give the affirmative charge requested by the defendants. The affirmative charge should never be given when there is any material conflict in the evidence, or when there is evidence which authorizes a reasonable inference of facts unfavorable to a right of recovery by the party asking such charge.

Charge designated A, requested by the defendants, exacted an improper standard or measurement of proof. The charge would have been good if it had been predicated upon reasonable satisfaction by the jury from the evidence, instead of the expression used in the charge, "if the jury are reasonably persuaded from the evidence." This charge, for the reasons stated, was properly refused.

As the tax deed offered by the defendants was not offered as muniment of title, but was expressly limited as color of title, charges 1 and 2 given by the court at the request of the plaintiff were misleading in their tendencies and we think manifestly calculated to injure and prejudice the rights of the defendants. If the tax deed had been offered as muniment of title, the giving of these charges would not have been improper, but as it was not so offered, there was no issue on the tax title as a muniment, and the natural tendency of the charges given were to destroy it even as color of title, or at least reasonably calculated to prejudice in this respect, and the charges given should have been refused.

For the errors pointed out, the judgment of the circuit court must be reversed and the cause remanded.

Reversed and remanded.